Sina Kianpour
Plaintiff  Pro Se
17412 Ventura Blvd. # 117
Encino, CA 91316
Telephone: 1 (818) 723 2281
sina.kianpour@yahoo.com



FILED
CLERK, U.S. DISTRICT COURT

JUL - 5 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

SINA KIANPOUR

LACV1905812-VAP- ASX

Plaintiff,

vs.

WELLS FARGO BANK, N.A.,
WELLS FARGO & COMPANY,

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)

COMPLAINT FOR:
1. Fraud (Deceit, Concealment,
     Intentional Misrepresentation)
2. Promissory Fraud
3. Document Forgery
4. Accounting Fraud
5. Aiding and Abetting Fraud
6. Negligent Retention and Supervision
7. Perjury

DEMAND FOR JURY TRAIL

///
///
///
///
///
///
///
///
///
///

PAID

JUL - 5 2019

Clerk, US District Court
COURT 4612

# TABLE OF CONTENTS

Page

I.   PARTIES .................................................................................. 3
II.  JURISDICTION AND VENUE ................................................. 3
III. FACTUAL ALLEGATIONS ...................................................... 4
    A.  The Incident ..................................................................... 4
    B.  Troubles began in Feb. 2016 ............................................ 5
    C.  Credit Card Account Problems ......................................... 6
    D.  Deposit Accounts Problems .............................................. 8
    E.  Exchanges with Wells Fargo's Chairman and CEO ................. 9
    F.  Related case: Basic facts ................................................. 12
    G.  Related case: Submission to Supreme Court ........................... 13
    H.  Plaintiff's Personal Account Profile ................................. 14
    I.  Wells Fargo Begins Bad Decision-Making ............................. 16
    J.  Request for Judicial Notice .............................................. 17
        1- Wells Fargo pays about $440 million for fraud,
           forgery to settle class action lawsuit.
        2- FEDERAL RESERVE Condemns Wells Fargo,
        3- TREASURY DEPT. and
           OCC (*Office of the Comptroller of the Currency*)
           condemn Well Fargo with $1.5 Billion fine,
        4- Other forgery and fraud cases against Wells Fargo.
V.   CAUSES OF ACTION
        Count 1 - Fraud
               (Deceit, Concealment, Intentional Misrepresentation) ... 18
        Count 2 - Promissory Fraud .............................................. 21
        Count 3 - Document Forgery ............................................. 22
               a.  Forged "Notice Of Nonpayment" ............................. 22
               b.  Bogus "Credit Card Contract" ................................ 24
        Count 4 - Accounting Fraud .............................................. 24
        Count 5 - Aiding and Abetting Fraud ................................. 25
        Count 6 - Negligent Retention and Supervision ..................... 26
        Count 7 - Perjury .......................................................... 28
        Claims Common To All Causes Of Action ............................. 29

PRAYER FOR RELIEF ...................................................................... 30
DEMAND FOR JURY TRAIL ............................................................. 30

# I.   PARTIES

1.   Plaintiff Sina Kianpour is an individual, citizen of California, USA.

2.   Defendants, Wells Fargo Bank N.A. and Wells Fargo & Company (collectively "WF" or "Wells Fargo") control, among others, a retail banking and credit card networks with their principal place of business in California, USA. Both Wells Fargo Bank N.A. and Wells Fargo & Company are head quartered in South Dakota.

3.   Whenever reference is made in this complaint to any act of Defendants such allegation shall mean that each defendant acted individually and jointly with the other defendant.

4.   Reservation to Name Additional Defendants:

In addition to the entities set forth as Defendants herein, there are other parties who may well be liable to Plaintiff. By not naming such persons at this time Plaintiff is not waiving his right to amend this pleading to add such parties should the circumstances warrant the additions.

# II.   JURISDICTION and VENUE

5.   Federal court has jurisdiction over this action pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different states. Both sides have conducted their business in Los Angeles county, California, and the damages alleged herein occurred in this county with repercussions which span well beyond a specific geographic location.

///

///

///

///

///

///

### III.   FACTUAL ALLEGATIONS

6.    This case is based on discovered evidence, facts and documents between Sept. 2017 and Apr. 2018, related to case number 2:17-cv-01757 SJO (GJSx). This case is at the Supreme Court of the United States at this time. Plaintiff shall seek the Court's permission to adjust this complaint depending on the outcome of the Supreme Court's decisions.

7.    Each and every allegation, quote and/or statement in this complaint is supported by written material and evidence. Plaintiff shall specifically point out if there is any statement without written material or evidence support.

### A.    The Incident

8.    On 01/15/2016 Plaintiff deposited a $600 *personal* check ("$600 check") from my brother in my *personal* checking account and it bounced. WF initially claimed [1] that the check had bounced on 01/21/2016 but discovery documents show that the actual bounce date was the next day (01/16/2016) [2].

9.    During the following two weeks WF re-deposits the $600 check in my account two (2) more times without my knowledge or permission -- violation of CCC §4202(a)(1) [3] and that is the cause of the incident and subsequent actions. Additional re-deposit dates were 01/21/2016 and 01/27/2016, according to WF.

10.   In the meantime my brother's bank (Wilshire Bank) contacts him on 01/26/2016 and he deposits a $650 check ("$650 check") in my account to cover for the bounced check plus bank charges - again, without my knowledge [4]. Copy of the $650 check shows that I did not endorse or deposit this check.

11.   The $650 check dated 01/26/2016 cleared on 01/27/2016 without problem according to the evidence which WF provided in Discovery (*see* ¶ 13).

---

[1] WF letter of  03/25/2016.
[2] Discovery in Sept. / Oct. 2017.
[3] CCC §4202: "(a) A collecting bank shall exercise ordinary care in all of the following: (1) Presenting an item or sending it for presentment."
[4] At that stage the $600 check had bounced two times.

---

12.  WF resubmits the $600 check for the third time on 01/27/2016 by phone. This is while WF knew that on the same date the $650 check had cleared from the same person, same bank, same account and there was no other check transaction under my account to cause a confusion. WF's Discovery documents including internal memos about their phone call with Wilshire bank show that they knew that those checks were related and there was no problem associated with the $650 check clearance.

13.  Furthermore, Wells Fargo confirms that they use the Federal Reserve's Automatic Clearing House ("ACH") for their check clearing services. The ACH has a next-day clearing rule. Wells Fargo had received the ACH confirmation for the $650 check on 01/27/2016.

14.  I learned about the unexpected events --between 01/15/2016 and 01/27/2016 and chaos which WF had started-- during the shocking phone call of 01/29/2016 with two Wells Fargo employees (*Andria Solis* and *Cynthia Mccray*) [5]. They announced that they had closed my accounts (checking, savings, credit card) and that is the "end [of] the relationship". WF employees also announced that no transaction / deposit is allowed in *any* of my accounts.

15.  In early Feb. 2016, I received a letter from WF dated 01/27/2016 confirming all accounts' closure ("scheduled for 02/10/2016") due to $600 bounced check case (Ex. A, P. 2).

### B.   Troubles began in Feb. 2016

16.  Accounts' closure has never been a reason for objection, complaint or cause of action - WF was free to close the account at any time. WF's furnishing defamatory and false reports to the public together with lies, cover-ups, oppressive, reckless, malicious behavior were the main causes for action --they have had devastating impact on Plaintiff's life, business and livelihood.

///

---

[5] WF provided a copy of call recordings in Discovery, Sept. / Oct. <u>2017</u>.

Troubles started to accumulate on top of each other -- separate sets of problems related to credit card and deposit accounts.

## C.    Credit Card Account Problems

17.    During phone call of 01/29/2016 I tried to find out about the situation of my credit card debt and how I should pay for it after the "end [of] the relationship",

Solis's response was: "**do nothing**, your account is going to close in 10 business days.".

Mccray's response was: "**you will not be able to make any deposit to your accounts.**" [6].

18.    To avoid delay in credit card payment I contacted WF the same day again by email. Payment instructions came back soon but it was not working --Reason: **my online access to initiate a transaction was blocked**.

19.    The *third attempt* to pay for credit card was on 02/01/2016 by email. WF's Customer Service (Michele L) response reads:

"I reviewed your account and our records show that **a hold was placed on the account to block all transactions**."

20.    Whenever I called WF the answer was that I had to wait until account closure process was complete as "scheduled for 02/10/2016".

It was an abnormal situation: On one hand WF was asking me to pay for credit card statement by email [7] and on the other hand they were not accepting any payment and the other problem was that the credit card account did not even exit anymore.

21.    Attempt #4 to pay for credit card was on 02/08/2016. I contacted WF by email again, pointed to the above problems and complained:

"... Could someone at WF tell me what is going on? I am totally confused."

---

[6]  Phone call with WF's Mccray, Minute 09:00 to 09:11.
[7]  Payment due date was the first of each month (Paperless).

---

The answer triggered another shock and alarm.

Lucia D., Wells Fargo Online Customer Service email response reads:

> "**Our records show** that our Fraud Prevention department has suspected **fraudulent activity on your credit card account** and would like to speak with you." (Ex. B, P. 2)

This is while WF's own credit card statements clearly show that **I had not used my card for months** (Ex. C, P. 2 and 3). So where did the "fraudulent transactions" come from when and where there was no transaction at all [!?].

All my follow-up phone calls remained unanswered and ignored. To this date --as I write these lines-- I have not found any WF employee who could show me those "**records**" of "fraudulent transactions" or any transaction at all.

22.   On Feb. 19, 2016 WF repeats its credit card fraud accusations again - this time in a letter:

> "As part of our Fraud Prevention efforts, we have temporarily closed the above referenced credit card account **until we verify you authorized certain activity on your account**. ... Credit card fraud is a serious issue."

I started calling again. No one provided any answer, stonewalling continued.

Later I learned that reckless behavior and exercising oppression of this kind (and "gaming" plus "negative public reports") to keep the customers quiet has been a major part of WF's modus operandi which have been going on for two decades [8] (*see* ¶ 51).

23.   As of Feb. 2016 (credit card statement period), WF began furnishing reports to Credit Reporting Agencies ("CRAs") regarding my nonpayment, delinquency and later continued with propagating "derogatory" comments.

---

[8]  - As confirmed by Federal Reserve, Treasury Dept. and OCC (Ex. D, P. 8-10).
- Jabbari and Heffelfinger v. Wells Fargo copies of forgeries and bogus contracts. (Ex. D, P. 2-7).

---

24. **A different surprise** came from WF in early March 2016 when I received a "new" credit card with invitation to activate it soonest i.e. restart of relationship.

They had reopened the credit card account. Like the first credit card the "new" card came without my request or application [verbal or written] and there was no contract attached to it (originals available).

I rejected their offer.

25. After I rejected the new card, I received WF's letter of 03/22/2016 stating that they closed the credit card account.

26. WF continued to charge interest on the closed account up to Aug. 2016 when total debt reached the limit of credit line then "charged-off" the total amount i.e. additional negative signals to CRAs and the public pointing to collection procedure, possible bankruptcy, etc.

27. I reported the above event plus deposit accounts' problems to WF's CEO asking for his intervention --included in below "Exchanges with Wells Fargo's Chairman and CEO".

### D.  Deposit Accounts Problems

28. On 02/11/2016 WF closed the deposit accounts and started furnishing two separate defamatory, incomplete and false reports to the public about Plaintiff (for checking and savings accounts) [9].

WF's Katherine Abney (Research/Remediation Analyst) letter of 05/02/2016 confirms the negative content of the furnished reports as follows:

> "... the bank may <u>continue to</u> report <u>mishandled accounts</u> and **adverse information** to EWS (Early Warning Services)." [10]

29. Earlier, in their letter of 03/25/2016 WF had stated that:

///

---

[9] I received two checks from WF after accounts closure (i) positive checking account balance after clearance of $650 check (ii) the savings account balance.

[10] EWS is a CRA which performs under FCRA rules but deals with deposit accounts only (no credit card) --- WF is a major shareholder of EWS.

> "When we have reason to believe that **activity is taking place** that poses a potential <u>risk to the funds of our customers</u> it is our policy to close that account and any related accounts."

When I ask WF's Abney to be specific about the "activity" [11] reference there is no answer. I continue to ask for explanation again in my letter of 05/12/2016:

> "Ms. Abney, ... I insist on receiving the exact and specific reasons about account closure - that is based on my legal rights. Write down what do you mean by 'reason to believe that activity is taking place that poses a potential risk to our customers' ... which activities are you talking about and what are those reasons for your belief? Be specific.".

WF did not answer. Stonewalling continued. The adverse public reports about Plaintiff were running with mounting effects so I decided to ask for intervention from their management.

### E.    Exchanges with Wells Fargo's Chairman and CEO

30.  Between Feb. and Aug. 2016 I tried to settle this case out of court, arrange for credit card balance payment, have WF to stop the adverse public reports to CRAs / EWS and move on --in vain.

31.  WF had perfect knowledge that I was running a sole proprietorship (DBA) and those "adverse" reports would cause harm at personal and business level - my personal credit reports would be used for business purposes too [12].

32.  I exchanged eight letters with WF --three of them were addressed to then Chairman and CEO (John G. Stumpf) asking for his intervention: 06/27/2016, 08/02/2016 and 08/29/2016.

///

///

---

[11] My letter of April 12, 2016.
[12] Business registration documents had been provided to various WF departments in 2012.

33.  I received astonishing responses --in fact, lies and cover-ups --mainly through Gregory Hopkin (Dept. Manager of Research and Correspondence). Here is a summary of WF's letter of 07/14/2016:

a.  As to my request about the reasons for negative public reports **they denied the existence of such reports**,

> "Additionally, there were no negative external reports made by Wells Fargo related to the closure of your deposit accounts."

EWS response to subpoena shows:

(i) there are external reports indeed,

(ii) both my checking and savings accounts have been reported as "Closed for Cause" as of 02/11/2016. The word "Cause" covers many scenarios --EWS provides examples of check-related activities which could be the "Cause" for account closure on their website: "check kiting, embezzlement and check floating".

b.  I had requested proper instructions for credit card balance payment and account settlement which reads:

> "All above accounts remain closed since Jan. 29, 2016 --access to online accounts have been both restricted and useless-- yet your employees are asking for payment without any hint where the payment should go to."

WF's response pointed to the same old standard payment instructions on the credit card statements i.e. the same account which was blocked, where deposits / transactions were not allowed and the account did not even exist.

c.  Hopkin also presents another lie too:

> "... we have deleted any internal negative reporting associated with this incident.".

In Discovery, EWS's response to subpoena clearly shows that it is a lie too -- based on rules of their operation which appears in the report guide: If/When a member bank deletes their internal information about an account (shared system updates the information and) EWS shows the keyword "Purge" next to that account --Example: "Closed / Purged" [13].

In this case, while EWS response to subpoena shows there were cases which WF had deleted my old accounts with "Closed / Purged" remark, the records related to deposit accounts in this case are not among them. Both accounts show "Closed for Cause" without keyword "Purge".

34. After the start of lawsuit WF began with lies to the court about EWS reports claiming that EWS system is designed for *bank employees only* and not individual consumers.

On March 09, 2017, page 4 of motion to dismiss ("MTD") the complaint, in footnote, Wells Fargo says:

> Early Warning Services "is a third party that provides fraud prevention services to member financial institutions by maintaining a database of members' former employees who were terminated for knowingly causing or attempting to cause financial loss".

Presentation of EWS report to the court ended this part of the deception, cover-ups and attempts to mislead the court.

35. Wells Fargo's management and employees' behavior have been a huge manifestation of the dominant culture of corruption, fraud, oppression, reckless behavior and indeed "pervasive and persistent misconduct" as Federal Reserve referred to them collectively (Ex. D, P. 8-9).

*///*

---

[13] EWS guide: The "Close / Purge" means there was no problem (or "Cause" for concern) with closure of the account and the bank has <u>deleted</u> their internal records.

---

## F.    Related case: Basic facts

36.  The Third Amended Complaint ("TAC") was based on two claims:

    i.    Negligence: treatment of $600 check, §4202(a)(2) [14] and §4202(b) [15].

    ii.    Cal. Consumer Credit Reporting Agencies Act ("CCCRAA") - §1785.25 (subparts 'a', 'b', 'c') i.e. WF is prohibited to furnish reports when they knew or should have known that they are *inaccurate* or *incomplete*. Plus they had the obligation to stop the EWS reports after I started the dispute and they knew that the reports were *incomplete* (at least).

37.  WF admits that they have furnished negative reports about the plaintiff to the public (*see* ¶¶ 28-29).

38.  WF admits that Plaintiff started a Direct Dispute (§660.4) case in early 2016.

39.  WF never issued a notice of "Frivolous or irrelevant disputes" (§660.4(f)). So they had the obligation, among others, to perform "Reasonable Investigation" about different aspects of the case (i.e. subparts of §660.4(a)).

40.  WF admits, and the court confirms, that they have furnished *incomplete* information to EWS about deposit accounts (§1785.25(a), (b), (c)) [16].

///

---

[14] CCC §4202: (a) A collecting bank shall exercise ordinary care in all of the following: ... (2) Sending **notice of dishonor or nonpayment** or returning an item other than a documentary draft to the bank's transferor **after learning** that the item has not been paid or accepted, as the case may be.

[15] CCC §4202(b): A collecting bank exercises ordinary care under subdivision (a) by taking proper action **before its midnight deadline** following receipt of an item, notice, or settlement. Taking proper action within <u>a reasonably longer time may constitute the exercise of ordinary care, but the bank has the burden of establishing timeliness.</u>

[16] Court Order of 07/17/2017, P.15, line 11 in second ¶ (Related case ECF#50):
"Moreover, Wells Fargo's submission that an **omission** cannot form a basis for liability under the FCRA is against the weight of controlling precedent."
*Court Quotes:* - Gorman, 584 F.3d at 1163
                - Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 40 (D.C. Cir.1984)

---

41. The court agreed with elements of bad faith in WF's treatment of the checks, case [17].

42. The court agreed that WF failed to perform "Reasonable Investigation" despite five separate claims of reviews [18]:

> "The Courts finds that Plaintiff has pled sufficient factual allegations to sustain his CCCRAA claim on the theory that Wells Fargo failed to conduct a reasonable investigation into the accuracy and completeness of the negative information it furnished to CRAs in light of the allegations concerning the circumstances surrounding the closure of his accounts and Wells Fargo's preventing him from making payment to his credit card account. For these reasons, the Court DENIES Wells Fargo's motion to dismiss Plaintiff's CCCRAA claim."

### G.    Related case: Submission to Supreme Court

43. There are seven issues which the plaintiff has submitted to the Supreme Court. One of them directly relate to this case which have been included here under the "document forgery".

Upon receiving the Court's order Plaintiff shall submit more information about other issues or a copy of "Petition For Writ Of Certiorari".

///

///

///

///

///

///

///

///

---

[17] Order of 05/30/2017, P.11, "Bad Faith" (Related case ECF#36).
[18] Order of 07/17/2017 P.16, line 16 (Related case ECF#50).

---

### H.   Plaintiff's Personal Account Profile

44.   All WF accounts combined:

- Checking and savings accounts Start: 04/2010,
- WF's first credit card offer: 01/2014 (accepted) [19],
- All accounts' closure: letter of 01/27/2016 [20],
- WF's second credit card offer: 03/2016 (rejected),
- Average cash flow of <u>all accounts combined</u>
  (checking + savings + credit card): **Less than $500 per month,**
- Average check deposits per month: **Zero,**
- Average issued check per month: **Zero.**

45.   It is not a surprise that Wells Fargo's attack on a microscopic account like this could have such a huge and devastating impact on the plaintiff's life. Plaintiff is an independent IT professional (contractor, consultant, programmer) with bachelors degree in banking.

My personal and business credit ratings, credibility, creditworthiness etc. are the same (*see* ¶ 31).

According to 15 U.S.C. §1681b(a)(3) (*Permissible Purposes of Consumer Reports*), a simple claim that an entity "**intends**" to do business with an individual serves as a legal authorization to access the person's credit and financial reports - no permission or notification is required. This is a basic tool in professional circles.

Since Feb. 2016 I have been living under a cloud of suspicion (among financial, human resources and background-checkers' communities) because of the above §1681b(a)(3) as there is red flag next to my name which equates to "has financial criminal record, not trustworthy".

---

[19] Plaintiff is responsible for this account's balance up to 01/29/2016 (about $1100).

[20] WF claims credit card account was closed on 03/22/2016 i.e. after I rejected their new (second) card offer in early March 2016.

---

46. Wells Fargo is the only entity who has ever furnished adverse report about Plaintiff to CRAs and/or EWS.

On one hand CRAs show that Plaintiff has not paid for his credit card --sends a signal for delinquency, "derogatory" account status, charge-off, collection procedure, bankruptcy-- and next to it EWS reports show there are "Cause"s for concern because Plaintiff has done "something wrong" with his checking and savings accounts -- the public don't see what is the amount or details of the case --and there is not even a "notation of dispute" (§1785.25(c)).

47. As direct result of WF adverse reports Plaintiff's credit score crashed (more than 200 points), credit lines cut by 60%, multiple pre-approved credit lines (up to $100,000) denied, new credit cards were denied, interest rates (APR) jumped between 300 to 600 percent, contracts did not finalize or withdrawn at final stages, potential investors / employers disappeared, Plaintiff was forced to close his business and that is not the end. EWS and CRAs keep and sell these information online up to 10 years (i.e. 2026-27).

All these material parts of damages are documented.

48. To justify their attack, WF tried to insinuate that around eighteen (18) months before the $600 check (deposit 01/15/2016) there was another $400 bounced check in my account in June 2014 [21].

49. WF refuse to answer whether propagating negative reports to the public is their normal treatment in such cases, is it a general policy, where are their guidelines and/or how many accounts have been affected using the same criteria.

As "Jabbari and Heffelfinger v. Wells Fargo" overall case show, and Federal Reserve and Treasury Dept. allude to in their condemnation communiqués, the reality is that Wells Fargo needed to target some accounts --small sacrifices to show the regulators that WF's people are vigilant combating "mishandled

---

[21] WF says there were total four (4) bounced checks in my account between account opening in 2010 and June 2014 (amounts between $400 to $700).

---

accounts"-- while they were in fact busy ripping off millions of their own customers (*see* ¶ 51, *Request for judicial notice*).

### I.   Wells Fargo Begins Bad Decision-Making

50.   WF provides a part of the pretext for their bad decision-making in Sept. / Oct. 2017 (Discovery). This is happening parallel to unauthorized, back-to-back resubmission of the $600 check (¶¶ 8-11):

a.   On 01/27/2016 WF receives <u>two</u> reports about the $650 check (deposited 01/26/2016). *First*, the Federal Reserve Automatic Clearing House ("ACH") confirms that the check had been cleared without problem [22]. *Second report* comes from EWS saying that the $650 check had bounced. WF admits the former as part of Discovery (email) exchanges and provides the latter document as part of the Plaintiff's Request for Production.

b.   WF finds out that EWS report is wrong the same day. In addition to Federal Reserve's ACH confirmation, WF's Angela Barkley internal memos show that she had a separate phone confirmation from payor bank that the $650 had been cleared. Therefore, WF's ledger and final account statement show the correct entry for $650 check credit on 01/27/2016 without problem.

Although WF knew perfectly well from day one that EWS report was a mistake they started their negative public reports on 02/11/2016 and continued them despite ongoing disputes and after multiple claims of "investigations" and "reviews" in bad faith.

///

///

///

---

[22] Wells Fargo confirms that they use Federal Reserve's ACH system for their check clearing operation.

---

### J.   Request for Judicial Notice

51.   Wells Fargo has a long history of fraud, forgery, oppression, customer rip-off, misconduct plus misuse and abuse of their legal privileges.

These are the conclusions of the following cases, opinions of the monetary and government authorities:

i.   <u>CONSOLIDATED CLASS ACTION</u>

Jabbari and Heffelfinger v. Wells Fargo & Company and Wells Fargo Bank N.A. --- 3:15-cv-02159-VC -- N.D. Cal.

Exhibit D (P. 2-7) contains only six pages of this class action to demonstrate one of Wells Fargo's basic methods of forgery and rip-off of millions of retail customers (starting as low as $4 per month each).

In 2017 WF agreed to pay about **$440 million** to settle this case [23].

ii.   <u>FEDERAL RESERVE CONDEMNATION</u>

Exhibit D (P. 8-9), Feb. <u>2018</u>: Sanctions and contempt statement against Wells Fargo for "**pervasive and persistent misconduct**" and "**serious compliance breakdown**" - result of the above case and more.

iii.   <u>TREASURY DEPT. CONDEMNATION</u>

<u>OFFICE OF THE COMPTROLLER OF THE CURRENCY ("OCC")</u>

Exhibit D (P. 10), Apr. <u>2018</u>: the OCC fined Wells Fargo more than **$1.5 Billion** for violations of law, **financial harm to consumers**, the bank's <u>failure to correct the deficiencies</u> ... that constituted **reckless, unsafe, or unsound practices** which resulted in violations of Section 5 of the FTC's unfair practices.

iv.   At this time there are different (yet similar in nature) lawsuits running against Wells Fargo for overcharging customers and fraud in various types of car payments, mortgages, insurance and so on.

It is the same corrupt culture and people who harmed the plaintiff.

---

[23] Plaintiff was approached to participate in two similar lawsuits but turned them down.

## V.   CAUSES OF ACTION

### Count 1 - Fraud

### DECEIT, CONCEALMENT, INTENTIONAL MISREPRESENTATION

52. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

53. Wells Fargo admits that they have furnished negative information about Plaintiff's deposit accounts to EWS and to the public. Defendants have the responsibility to demonstrate that plaintiff committed an illegal act (in each account) which deserves the adverse public reports according to law. Wells Fargo also owes a duty to Plaintiff to provide their guidelines about such cases and demonstrate that all similar cases have been treated the same way.

54. Defendants concealed the information about unauthorized treatment of the $600 check. This includes blocked Notices of nonpayment for second and third submissions.

55. Defendants made false statements about the $600 check first and second bounce dates in their letters of 03/25/2016 (about two months after the incident) according to §4202(a)(2).

56. When Federal Reserve ACH confirms the clearance of an item it is (and must be considered as) proof of payment and based on discovery evidence Defendants had this confirmation on 01/27/2016 for the $650 check.

All Defendants' statements, direct or implied, about rejection or nonpayment of the $650 check were intentional misrepresentation. Defendants intended to deceive the plaintiff and deliberately misrepresent to the court (in related case) to imply that Wells Fargo was dealing with more than one bounced check and/or Plaintiff was involved in illegal or suspicious "activity".

57. On 01/29/2016 --recorded phone call-- Wells Fargo knew that the $650 check had been cleared on 01/27/2016 nevertheless WF's Mccray lied to plaintiff, denied the clearance of that check, insisted that the check had bounced, and

---

exercised pressure on the Plaintiff to pay for it again. That was an intentional misrepresentation and deception.

58.  In Feb. 2016, when the defendants started the negative EWS reports for the first time, they did not notify the plaintiff - violations of §1681s-2(a)(7)(A),(B) i.e. *Notice to Consumer Required*. Defendants blocked that notice to conceal the information and harm the plaintiff with negative reports.

59.  Defendants' accusations of credit card fraud were wrong and false. Defendants knew that Plaintiff had not used his credit card for months.

60.  Defendants' claim that they have the "records" of Plaintiff's credit card fraudulent activity was false.

61.  Defendants' claim that they were searching to verify that Plaintiff "authorized certain activity on [his] account" was false.

62.  Defendants' CEO's office statement denying the existence of external reports about deposit accounts was false.

63.  Defendants CEO's office false statement about existence of "external reports" was intentional misrepresentation to conceal the information about violations of law, and deceive the plaintiff not to follow his case.

64.  Defendants' CEO's office statement about deletion of their internal records was false.

65.  At all times, the only instructions that Wells Fargo provided to plaintiff for credit card balance payment pointed to the account that they had confirmed (i) was blocked (ii) deposits and transactions were not allowed (iii) and it was closed. Plaintiff wrote these problems to Defendants and their CEO together with offer of payment several times. These are in addition to Plaintiff's verbal requests during the (recorded) phone calls of 01/29/2016 and numerous follow-up calls in Feb. and March 2016.

Defendants intentionally misrepresented this issue to all parties claiming that Plaintiff refused to pay.

66. Wells Fargo's Abney's statements and accusations that the plaintiff had certain "activity" under his account and "mishandled" his account are false.

67. Wells Fargo's Hopkin statement and accusation that the plaintiff had "activity *of this type*" under his account was false and misrepresentation.

68. Wells Fargo's written statements (both Abney and Hopkin) that the $600 bounced check posed a "risk" to their (organization and/or) other customers' funds was false and misrepresentation.

69. Defendants' statement that Plaintiff applied for a credit card verbally (in Jan. 2016) is false. Defendants offered the card, I accepted it and there was no contract.

70. Wells Fargo made five claims of "reviews" and/or "investigations" about this case. Their claims were false and intended to deceive the plaintiff.

71. In Defendants' letter of May 2016, all the following direct and indirect claims and statements about the credit card are false:

   i. Wells Fargo "records do not show we have rejected any attempts by [Plaintiff] to pay the required monthly payments."; and,

   ii. WF's perception that Plaintiff's account was still active; and,

   iii. "We reviewed the information reported to the credit bureaus and confirm that Wells Fargo is accurately reporting this account".

72. Wells Fargo lied and misrepresented to the court (in related case): Despite the fact that Defendants are major shareholders (and board member) of EWS and have complete knowledge about their activities they misrepresented the functions and mission of EWS to mislead the plaintiff and the court to support their MTD the complaint (¶ 34).

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

///

## **Count 2 - Promissory Fraud**

73.  Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

74.  On Jan. 29, 2016 --recorded phone call, Minute 05:37 to 05:59-- WF's Mccray emphasized that:

> "There will not be **any** type of negative reporting to **any** other financial institution. This will just be in Wells Fargo."

EWS reports and response to subpoena demonstrate the falsity of this promise. Series of related events and statements point to malice, intentional misrepresentation and account targeting scam in this case from day one.

75.  Wells Fargo made promises and created expectations which never materialized and they never intended to deliver. Based on the nature of Direct Dispute, events, exchanges and circumstances of the case, Plaintiff justifiably had to deal with (and rely on) the promises, assertions and representations made by Wells Fargo simply because CRAs / EWS did not and do not have the necessary information to comment on different aspects of the case.

76.  Wells Fargo made several promises and claims of investigations and reviews - both through their employees as well as the office of their CEO. The results indicate that all those claims and promises were false. Some of Defendants' assertions demonstrate that they had not even read their own previous communications.

77.  In their May 2016 letter Defendants promised to "instruct all CRAs" and make sure credit card information were reported correctly across the board but CRA reports show inaccuracies and wrong information in Sept. / Oct. 2017.

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

///

## **Count 3 - Document Forgery**

78. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

79. During discovery --shortly before filing the motion for summary judgment ("MSJ") -- WF forged two new documents for itself. Both came with multiple self-serving "declarations":

    a. First document was a *replacement* for the "notice of nonpayment".

    b. Second document was WF's bogus credit card contract without my application and/or signature.

Explanations as follows:

### a.   FORGED "NOTICE OF NONPAYMENT"

80. For more than seven (7) months in the process WF relied on their letter of 01/**27**/2016 and referred to it as both "account closure notice" <u>and</u> as their "notice of nonpayment" in treatment of the $600 check (Ex. A, P. 2). WF even filed MTD the complaint based on this "notice of nonpayment".

81. On **05/30/2017** the court denied Defendants' MTD the negligence claim reiterating its emphasis on the <u>date</u> of that notice (related case ECF#36, P. 9, last line):

> "(FAC ¶ 35, Ex. D [January 27, 2016 [24] letter from Wells Fargo's Prevention Contact Center].) This approximately **week-long window** is sufficient to sustain a claim under section 4202(a)(2)."

> *(Id.) Page 12 of the court order reads:*

> "The Court concludes that Plaintiff's negligence claim is well pled, and DENIES Wells Fargo's request that the Court dismiss the negligence claim."

At this stage it was clear that WF had failed to perform their "duty of ordinary care".

---

[24] Typing mistake in court's order reads "2017".

---

82. About five months later --during discovery-- shortly before using it for their MSJ, WF presented a *replacement*, a surprise "new notice of nonpayment" dated "01/**21**/2016" **--WF covered the exact "week-long window"** (Ex. A, P. 3). It has a totally different shape, form, layout, wording etc.

83. Plaintiff filed his objections in multiple submissions:

> "The [new] notice for $600 check appeared seven months after the start of this action and is not credible in Plaintiff's view [because of the above circumstances and unjustifiable delay]."

84. When we ask Wells Fargo about the reason for months of delay their response (in Answer Brief) reads: "*the [new] notice was not **responsive**"* at any stage, to any situation or specific District court's comment or opinion.

85. When a reasonable jury looks at the above court's statement and overall exchanges about the "notice of nonpayment" which was the centerpiece of the dispute from day one they would agree that:

   i. All of them beg and shout for proper reaction which is, presentment of timely notice - if there was any; and

   ii. To accept WF's forgery a reasonable jury must further believe that an army of 5 to 7 lawyers plus back-office support of Wells Fargo engage in a lawsuit and exchanges for months about that document dated 01/27/2016 ... submit MTD the negligence claim based on that document and it occurs to none of them that they must include the unique and the most important evidence of their case (dated 01/21/2016) in their motion to get rid of the negligence claim ...and that situation continues for another five months until a few weeks before MSJ [!?].

   iii. A theory that all Wells Fargo lawyers and staff could not distinguish Ex. A, P.2 from Ex. A, P.3 is futile. Notice of nonpayment dated 01/21/2016 is a forgery.

///

### b.   BOGUS "CREDIT CARD CONTRACT"

86. Defendants presented a bogus credit card contract without my application and/or signature just before their MSJ. As stated in above "factual allegations" Plaintiff has never applied for a Wells Fargo credit card, both cards came as an offer without any contract or conditions attached to it (second card's original documents are available).

87. When I objected to the written contract (by email) Wells Fargo changed their story: WF's VP issued a new self-serving declaration that the contract was "verbal" - that is, without personal knowledge that such an account even existed before that action; As I submitted to the court "Kotzman's statement is a lie ...".

88. In practice, she *declared* that the written contract was valid because the teller read about 7 pages of (small font, highly condensed) written material patiently and received my verbal confirmation on all points -- including that WF is allowed to charge interest after CBG (account Closed By Grantor) until they reach the ceiling of credit card limit. Anyone who has occasionally walked in a retail bank branch can testify for the improbability of such a scenario - it's improbable in any retail bank branch, not only WF.

89. Credit card written or verbal contract is a forgery.

WHEREFORE, Plaintiff prays for relief as set forth below.

### Count 4 - Accounting Fraud

90. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

91. Defendants interest charges after credit card account closure are false in nature and fraudulent accounting entries without any contract. Those charges are fraudulent especially when Plaintiff repeatedly offered the payment and Defendants refused to accept it.

///

///

92. There has been no verbal or written credit card contract to authorize interest charges after account closure date (CBG) and Plaintiff never agreed with those conditions.

93. All credit card account's monthly balances after account closure date and total charge-off amount reported to third parties are false.

94. Defendants have reported identical account balance (and charge-off) to all CRAs but with different account closure dates (with considerable gaps) which is incoherent.

Even in one case, Experian shows that the credit card account is still open. This is while Defendants had claimed (in May 2016) that they had *"reviewed the information reported to the credit bureaus and confirm that Wells Fargo is accurately reporting this account"*.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **Count 5 - Aiding and Abetting Fraud**

95. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

96. Wells Fargo's desire to boost its revenue and profit has been the impetus behind loose or inadequate policies and procedures to prevent the rampant corruption and fraud in which its employees and agents participated (*see* Count 6). Plaintiff would not have been victimized if Defendants had applied meaningful monitoring and control over their employees and agents.

97. Defendants' employees and agents were allowed to use the "Wells Fargo" name, arrange coordinated attacks on individual accounts, receive substantial support, and cause such widespread harm to innocent victims like Plaintiff as correctly recognized by the Federal Reserve and Treasury Dept. (¶ 51).

Plaintiff is not the only victim of Wells Fargo's corrupt system.

///

///

89. The above deficiencies and corrupt culture of encouraging fraud is dominant at Wells Fargo even today. In her declarations, Wells Fargo's VP presents details and assertions under oath which the defendants had vehemently denied previously, again under oath (*see* Count 7 - Perjury at ¶¶ 109-115).

90. WF's Kotzman declarations to the court contains baseless claims (without personal information), false statements and misrepresentations. For example, while there is a litany about *the $650 check situation*, there is not a single statement that Wells Fargo made a mistake or, the EWS report was wrong or, the check had cleared without problem. In any case, the responsibility of decision-making remains with Wells Fargo regardless of whether or how third parties provided bad advice or feedback to the defendants.

91. Defendants knew or should have known that their employees and agents were materially fueling the account targeting and negative reporting scam, but WF did not take adequate measures to halt that harmful activity before Plaintiff was victimized.

92. Upon information and belief, Defendants not only had actual knowledge of the their employees' and agents' dreadful misconduct but encouraged and facilitated their illegal activities (¶ 51).

WHEREFORE, Plaintiff prays for relief as set forth below.

## Count 6 - Negligent Retention And Supervision

93. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

94. This action seeks damages based upon Defendants' negligent retention and supervision of their (current and ex) employees, agents and/or representatives, including but not limited to ...,

- Cynthia Mccray (title unknown),

- Connie Kotzman (VP),

- Katherine Abney (Research/Remediation Analyst),

- Angela Barkley (title unknown),

- Andria Solis (title unknown),

- Lucia D. (Wells Fargo Online Customer Service),

- John G. Stumpf (Ex Chairman and CEO),

- Gregory Hopkin (Dept. Manager of Research and Correspondence),

... who are responsible for, inter alia, knowingly starting this case and purposefully used pressure, lies, misrepresentation and deceit to harm the plaintiff and assisted furthering the corrupt culture of oppression at Wells Fargo.

95.  Wells Fargo knew (or should have known) that the plaintiff could not possibly have any control in any part of this case --namely, multiple unauthorized check submission and/or my brother's $650 check deposit and/or EWS wrong report and/or interactions between Wells Fargo with EWS, payor bank and/or Federal Reserve ACH.

Defendants knew or should have known that their employees, representatives and agents were engaging in activities that were improper and harmful to Plaintiff (*see* ¶¶ 30-35, Exchanges with Chairman and CEO).

96.  Defendants had an obligation to investigate and monitor their employees' and agents' activities in connection with account targeting scam or adverse public reports; and, had Defendants conducted even a reasonably diligent investigation with respect to their employees' and agents' actions in that regard, Defendants would have discovered that their employees and agents were, in fact, rendering harmful assistance to a criminal enterprise that was perpetrating the scam.

97.  Defendants had a duty to take steps to prevent or rectify the improper activities and conduct of their employees and agents.

98.  Rather than discharging their duties to Plaintiff, Defendants turned a blind eye to, or failed to exercise reasonable means to discover and correct, active misconduct on the part of their employees and agents.

99. As a direct and proximate result of Defendants' negligent retention and supervision of their employees and agents, Plaintiff suffered damages for which Defendants are liable.

WHEREFORE, Plaintiff prays for relief as set forth below.

## Count 7 - Perjury

100. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

101. On Aug. 28, 2017 --Discovery's initial disclosure rule 26(a)(1)(A)(ii)-- Wells Fargo confirms that they do have documents pertaining to information furnished by Wells Fargo to EWS regarding Plaintiff's accounts.

102. In Response to Plaintiff's Request for Production WF changed their story and stated that they have no records about information they furnished to EWS.

103. In Oct. 2017, in Response to Plaintiff's Request for Admission Wells Fargo confirmed they have "absolutely" no file / document / record about the information which they transmitted to EWS.

104. Among their MSJ papers, WF's VP (Kotzman) sworn declaration tells the court that she knows exactly what Wells Fargo transmitted to EWS and when. She provided details with exact quotes of words and phrases.

105. The statements from WF's CEO office denying the existence of external report about deposit accounts and deletion of their internal reports should be considered next to the above items.

106. All the above declarations (¶¶ 110-113) come with acknowledgment of penalty of perjury and all the above of them can not be true at the same time. This is the continuation of the same corrupt organization.

WHEREFORE, Plaintiff prays for relief as set forth below.

///

///

///

## CLAIMS COMMON TO ALL CAUSES OF ACTION

107. Plaintiff realleges and incorporates by reference each and every allegation contained in forgoing as though fully set forth herein.

108. Wells Fargo's continued publications of baseless and false reports about Plaintiff to the public was with complete knowledge that the negative reports would harm the plaintiff at personal and business level.

109. As direct and proximate result of Defendants' participation in, and furtherance of the issues in this case, Plaintiff has suffered both material and non-material damages.

110. Defendants knowingly and willingly disregarded legitimate plaintiff rights and denied him access to information.

111. All Defendants' actions have been willful, premeditated, malicious and oppressive performed with actual intentional ill will. They were perfectly aware of the effects and consequences of their actions and misconduct.

112. Defendants have published false, inaccurate, defamatory reports, statements and alerts, both internal and external to defendants' organizations, reckless for plaintiff's rights, with malice and oppression toward plaintiff in that defendants knew that the statements were shaped, or acted with disregard for the truth of those reports, publications and statements, thereby entitling plaintiff to an award of punitive damages.

113. None of the defendants' accusations of wrongdoing, fraud and/or illegal activities are true as defendants could not have reasonably believed the allegations due to plaintiff's history as well as size and nature of the activities.

114. As direct result of defendants' misconduct and negligent, reckless, malicious, wrongful acts as well as continuous false, inaccurate and defamatory publications plaintiff has suffered both material and non-material damages in all aspects of his life since January 2016 Plaintiff is entitled to general, special and consequential damages for loss of reputation, dignity, trustworthiness,

credibility, creditworthiness, credit standing, credit capacity and lost opportunities. Plaintiff has endured personal humiliation, disgrace, emotional distress, shame, agony, pain and suffering, mortification and hurt feelings.

115. The effects of Defendants wrongful acts have been damaging the plaintiff and will continue to harm the plaintiff directly for about a decade as their incorrect reports will remain on public display for years to come.

WHEREFORE, Plaintiff prays for relief as set forth below.

## DEMAND FOR JURY TRAIL

Plaintiff hereby requests a jury trial on the issues raised in this complaint.

## REQUEST FOR RELIEF

WHEREFORE, the plaintiff requests and prays:

1) For compensatory damages in an amount to be determined at trial;

2) For Court's Order that Defendants remove all adverse information which they have furnished to CRAs, EWS and their resellers;

3) For plaintiff's cost of suit;

4) For punitive damages;

5) For such other relief as the court may deem just and proper.

Dated: July 05, 2019   Respectfully submitted,

Sina Kianpour

Plaintiff Pro Se

---

**Exhibit A**                                          Page
\-------------------------------------------          \------

- WF's original account closure
  notice and Notice of nonpayment
  dated 01/27/2016.                                     2

- WF's Forged Notice of nonpayment
  dated 01/21/2016.                                     3

**Exhibit B**
\-------------------------------------------

WF's first accusation of credit card fraud             2
dated 02/08/2016.

**Exhibit C**
\-------------------------------------------

WF's credit card statements between
Nov. to Jan. 2016 which shows Plaintiff
had not used the card at all.                          2-3

**Exhibit D**
\-------------------------------------------

- Jabbari and Heffelfinger v. Wells Fargo              2-7
  Forgery and Fraud class action,
  WF paid about $440 million.

- Federal Reserve condemns Wells Fargo
  for "pervasive and persistent misconduct..."         8-9

- Treasury Dept. condemns Wells Fargo
  with +$1.5 Billion fine for
  "deficiencies and violations of law,
   the financial harm to consumers..."                 10

# EXHIBIT  <u>A</u>

P. 1

**WELLS FARGO**

MAC 143-043
PO Box 7406
San Francisco, CA 94120-7406

January 27, 2016

*[handwritten notes:]* Acc Bal 3ent log
— Chosin Cheque 75.04
Cashed 02/22/2016 near Elimination Docter
— Second Cheque Too Cashed

SINA KIANPOUR
5151 WHITE OAK AVE APT 312
ENCINO CA 91316-2446

Subject: The following accounts will be closed

**Account Number**
XXXXXX-XXX9612

**Account Number**
XXXXXX-XXX0451

Dear Sina Kianpour:

We are writing you to let you know that we have begun the process of closing your account(s) because of one or more checks that were deposited or cashed that may be returned unpaid for insufficient funds.

Monetary transactions on the account(s) are blocked and the card(s) linked to the account(s) is deactivated.

You may verify the current balance of your account(s) at any store, at www.wellsfargo.com, or by calling 1-800-869-3557, available 24 hours a day, 7 days a week.

- If the balance is positive, your account(s) is scheduled to be closed by 02/10/16, and a cashier's check for any funds due to you will be mailed to the address above when the account is closed.

- If the balance is negative, please make a cash deposit in the exact amount of the overdraft. You are responsible for payment of any money owed when the account is closed.

For assistance or if you have questions, please call us at 1-888-231-0757 Monday through Friday from 6:00 a.m. to 6:30 p.m. or Saturday from 7:00 a.m. to 4:00 p.m. Pacific Time.

Prevention Contact Center



*0056N027|000286|01|01|0|0|0|0|*

Prevention Contact Center
MAC A0143-043
P.O. Box 7406
San Francisco, CA 94120-7406



01/21/16

SINA KIANPOUR
5151 WHITE OAK AVE APT 312
ENCINO CA    91316-2446



Forged Notice

Re:  Account Number: XXXXXXXXXXXXX9612

Dear Customer:

The check(s) identified below that was deposited or cashed on your Wells Fargo
account has been returned unpaid. We have re-deposited the check(s) and are
placing a hold on the funds from the check(s) until the date(s) indicated below.

| Re-Deposit Date/ Item Amount | Amount Delayed | Hold Reason/ Date Funds Will Be Available |
|---|---|---|
| 01/21/16 $600.00 | $600.00 | Insufficient funds at inquiry time 02/01/16 |

A hold means that although the check amount is credited to your account, the funds
are not available for your use (please refer to the last page of this letter
for more information about a hold on your account). To avoid overdrawing your
account and incurring overdraft fees, during this time please do not make
withdrawals or write checks against these funds (if your account allows check
writing).

If the check(s) listed above is returned again, we will mail a notice to you the
same day and deduct the amount of the check(s) from your account. A deposit item
return fee will also be deducted from your account for each check returned (unless
your account does not assess a fee for returned checks). Please refer to your
account Fee and Information Schedule for the amount of the fee.

We understand the inconvenience that can occur when a check is returned. If you
have questions regarding the availability of funds, please refer to the
information on the last page of this letter or contact one of our
representatives at the telephone number printed on your monthly account statement.

We appreciate your business and thank you for banking with Wells Fargo.

Sincerely,

Prevention Contact Center

RDH-0834-P    00114              PAGE 1              CONTINUED ON NEXT PAGE

**P. 3**

**Exhibit A**                                           Page
-------------------------------------------             ------
- WF's original account closure
   notice and Notice of nonpayment
   dated 01/27/2016.                                     2

- WF's Forged Notice of nonpayment
   dated 01/21/2016.                                     3

**Exhibit B**
-------------------------------------------
WF's first accusation of credit card fraud              2
dated 02/08/2016.

**Exhibit C**
-------------------------------------------
WF's credit card statements between
Nov. to Jan. 2016 which shows Plaintiff
had not used the card at all.                           2-3

**Exhibit D**
-------------------------------------------
- Jabbari and Heffelfinger v. Wells Fargo               2-7
Forgery and Fraud class action,
WF paid about $440 million.

- Federal Reserve condemns Wells Fargo
for "pervasive and persistent misconduct..."            8-9

- Treasury Dept. condemns Wells Fargo
with +$1.5 Billion fine for
"deficiencies and violations of law,
 the financial harm to consumers..."                    10

# EXHIBIT   <u>B</u>

 **Wells Fargo Business Online®**

## Message Detail

< Previous | Next >

| Subject | Re: Online banking questions (KMM50721791V63077L0KM) |
|---|---|
| Received | February 8, 2016 |
| From | Customer Service |
| | Contact Us |

Dear Sina Kianpour:

Thank you for replying to our recent email. My name is Lucia, and it is my pleasure to assist you today.

I would like to thank you for choosing to have your accounts with us. We appreciate having you as our customer.

Ms. Kianpour, I understand your concern regarding your credit card account. I can see the importance of this matter and it is perfectly understandable how you feel.

**Where are those records?**

Our records show that our Fraud Prevention department has suspected fraudulent activity on your credit card account and would like to speak with you. Because they have not been able to contact you, a temporary block has been placed on the account. The temporary block is a security measure placed for your protection to help prevent fraudulent transactions from posting to your account. I am not able to remove the block from your card based on an email request because our Fraud Prevention department requires that they speak with you directly. For further assistance regarding this issue, please call our Fraud Prevention department at 1-800-723-5533 or collect at 925-825-7600. Agents are available to assist you Monday through Saturday from 6:00 a.m. to 9:00 p.m. and Sunday from 6:00 a.m. to 6:30 p.m., Pacific Time. If you are currently not in the U.S., you can call us collect at 1-925-825-7600.

I know that your time is valuable and I would not direct you to contact us by telephone unless absolutely necessary. I apologize that I am not able to assist you with this issue through email.

On behalf of Wells Fargo, thank you for your business. We are happy to have you as our customer and appreciate the opportunity to assist you today.

Sincerely,
Lucia D
Wells Fargo Online Customer Service



ORIGINAL MESSAGE:

Today I received an email for credit card minimum payment. If you look at our previous email exchanges and phone calls (since Jan 29), when I wanted to pay for the card I received an answer that some one has decided to close these accounts and transactions are not possible, when I wanted do transactions the answer was that the account will be closed in 10 days and I will receive a cheque after 10 days (that was on Jan 29). But now I am getting "statement ready" and "card notifications". Could some one in WF tell me what is going on? I am totally confused.

Sina Kianpour

55b0909a-aa70-42b1-a29c-ce18de39b922

🏠 **Equal Housing Lender**

© 1995 - 2016 Wells Fargo. All rights reserved.

**P. 2**

https://messagecenter.wellsfargo.com/inbox/application/detail_internal?platformrserv&in... 02/09/2016

**Exhibit A**                                             Page
-------------------------------------------              ------
- WF's original account closure
  notice and Notice of nonpayment
  dated 01/27/2016.                                         2

- WF's Forged Notice of nonpayment
  dated 01/21/2016.                                         3

**Exhibit B**
-------------------------------------------
WF's first accusation of credit card fraud
dated 02/08/2016.                                           2

**Exhibit C**
-------------------------------------------
WF's credit card statements between
Nov. to Jan. 2016 which shows Plaintiff
had not used the card at all.                             2-3

**Exhibit D**
-------------------------------------------
- Jabbari and Heffelfinger v. Wells Fargo                 2-7
Forgery and Fraud class action,
WF paid about $440 million.

- Federal Reserve condemns Wells Fargo
for "pervasive and persistent misconduct..."             8-9

- Treasury Dept. condemns Wells Fargo
with +$1.5 Billion fine for
"deficiencies and violations of law,
 the financial harm to consumers..."                       10

# EXHIBIT <u>C</u>

**WELLS FARGO**

**VISA**



| | | |
|---|---|---|
| Account Number | Ending in 7821 | |
| Statement Billing Period | 12/09/2015 to 01/08/2016 | |
| Page 1 of 6 | | |

## Balance Summary

| | |
|---|---|
| Previous Balance | $1,136.55 |
| - Payments | $20.00 |
| - Other Credits | $0.00 |
| + Cash Advances | $0.00 |
| + Purchases, Balance Transfers & Other Charges | $0.00 |
| + Fees Charged | $0.00 |
| + Interest Charged | $2.78 |
| = New Balance | $1,119.33 |

| | |
|---|---|
| 24-Hour Customer Service: | 1-800-642-4720 |
| TTY for Hearing/Speech Impaired: | 1-800-419-2265 |
| Outside the US Call Collect: | 1-925-825-7600 |
| Wells Fargo Online®: | wellsfargo.com |

Send General Inquiries to:
PO Box 10347, Des Moines IA, 50306-0347

| | | | |
|---|---|---|---|
| Total Credit Limit | $1,500 | Total Available Credit | $380 |

## Payment Information

| | |
|---|---|
| New Balance | $1,119.33 |
| Minimum Payment | $15.00 |
| Payment Due Date | 02/02/2016 |

Send Payments To:
PO Box 51193, Los Angeles CA, 90051-5493

**Late Payment Warning:** If we do not receive your Minimum Payment by 02/02/2016, you may have to pay a late fee up to $35.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay ... | You will pay off the New Balance shown on this statement in about ... | And you will end up paying an estimated total of ... |
|---|---|---|
| Only the minimum payment | 10 years | $2,290 |
| $40 | 3 years | $1,426 (Savings of $864) |

If you would like information about credit counseling services, refer to www.usdoj.gov/ust/eo/bapcpa/ccde/cc_approved.htm or call 1-877-285-2108.

## Important Information

PLEASE SEE THE ENCLOSED IMPORTANT CHANGES TO YOUR ACCOUNT TERMS, IN A SUBSEQUENT PAGE OF YOUR BILLING STATEMENT.

PLEASE READ THE ENCLOSED BROCHURE FOR IMPORTANT CHANGES TO YOUR WELLS FARGO REWARDS® PROGRAM TERMS AND CONDITIONS.

## Wells Fargo Rewards® Program Summary

| | | |
|---|---|---|
| Rewards Balance as of: | 12/31/2015 | 1,456 |

The Rewards Balance is for **Rewards ID 60009164511**.
This balance may be inclusive of other contributing Rewards accounts. For up-to-date Rewards Balance information, or more ways to earn and redeem your rewards, visit MyWellsFargoRewards.com or call 1-877-517-1358.

## Transactions

| Trans | Post | Reference Number | Description | Credits | Charges |
|---|---|---|---|---|---|
| **Payments** | | | | | |
| 12/30 | 12/30 | 7446542BD0A92NN47 | ONLINE PAYMENT | 20.00 | |
| | | TOTAL PAYMENTS FOR THIS PERIOD | | $20.00 | |
| **Fees Charged** | | | | | |
| | | TOTAL FEES CHARGED FOR THIS PERIOD | | | $0.00 |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION ABOUT YOUR ACCOUNT          Continued ➡

5596      YKG      1    7  4   160108  0        PAGE 1 of 6      1 0  5583  2000  COEL  01DP5596

---

Detach and mail with check payable to Wells Fargo

| | |
|---|---|
| Account Number | 4465 4203 3391 7821 |
| New Balance | $1,119.33 |
| Minimum Payment | $15.00 |
| Payment Due Date | 02/02/2016 |

0011193300002000000150044654203339178213

| | |
|---|---|
| Amount Enclosed | $ |



SINA KIANPOUR
5151 WHITE OAK AVE APT 312
ENCINO CA 91316-2446

WELLS FARGO CARD SERVICES          YKG
PO BOX 51193                       4
LOS ANGELES CA 90051-5493

Check here and see reverse for address and/or phone number correction.

**WELLS FARGO**

**VISA**



Account Number
Statement Billing Period
Page 1 of 2

4465 4203 3391 7821
01/09/2016 to 02/05/2016

## Balance Summary

| | |
|---|---|
| Previous Balance | $1,119.33 |
| - Payments | $0.00 |
| - Other Credits | $0.00 |
| + Purchases, Balance Transfers & Other Charges | $0.00 |
| + Cash Advances | $0.00 |
| + Fees Charged | $15.00 |
| + Interest Charged | $2.48 |
| = New Balance | $1,136.81 |

24-Hour Customer Service: 1-800-642-4720
TTY for Hearing/Speech Impaired: 1-800-419-2265
Outside the US Call Collect: 1-925-825-7600
Wells Fargo Online®: wellsfargo.com

Send General Inquiries To:
PO Box 10347, Des Moines IA, 50306-0347

| Total Credit Limit | $1,500 | Total Available Credit | $0 |
|---|---|---|---|

## Payment Information

| | |
|---|---|
| New Balance | $1,136.81 |
| Minimum Payment | $44.00 |
| (Includes Past Due Amount of $15.00) | |
| Payment Due Date | 03/02/2016 |

Send Payments To:
PO Box 51193, Los Angeles CA, 90051-5493

**Late Payment Warning:** If we do not receive your Minimum Payment by 03/02/2016, you may have to pay a late fee up to $35.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay ... | You will pay off the New Balance shown on this statement in about ... | And you will end up paying an estimated total of ... |
|---|---|---|
| Only the minimum payment | 10 years | $2,308 |
| $41 | 3 years | $1,468 (Savings of $840) |

If you would like information about credit counseling services, refer to www.usdoj.gov/ust/eo/bapcpa/ccde/cc_approved.htm or call 1-877-285-2108.

## Important Information

YOUR ACCOUNT IS PAST DUE. PLEASE CALL 1-800-988-8019 OR VISIT WELLSFARGO.COM TO MAKE A PAYMENT. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

## Wells Fargo Rewards® Program Summary

Rewards Balance as of: 01/31/2016   1,456

The Rewards Balance is for **Rewards ID 60009164511**.
This balance may be inclusive of other contributing Rewards accounts.  For up-to-date Rewards Balance information, or more ways to earn and redeem your rewards, visit MyWellsFargoRewards.com or call 1-877-517-1358.

## Transactions

| Trans | Post | Reference Number | Description | Credits | Charges |
|---|---|---|---|---|---|
| **Fees Charged** | | | | | |
| 02/05 | 02/05 | | LATE FEE | | 15.00 |
| | | | TOTAL FEES CHARGED FOR THIS PERIOD | | $15.00 |

NOTICE:  SEE REVERSE SIDE FOR IMPORTANT INFORMATION ABOUT YOUR ACCOUNT       Continued ➡

5596       YKG       1   7 4   160205   0       A D PAGE 1 of 2       1 0  5583  2000  C06L   O1D85596

Detach and mail with check payable to **Wells Fargo**

| | |
|---|---|
| Account Number | 4465 4203 3391 7821 |
| New Balance | $1,136.81 |
| Minimum Payment | $44.00 |
| (Includes Past Due Amount of $15.00) | |
| Payment Due Date | 03/02/2016 |

0011368100002000000440044654203339178216

Amount Enclosed $

SINA KIANPOUR
5151 WHITE OAK AVE APT 312
ENCINO CA 91316-2446

WELLS FARGO CARD SERVICES       YKG
PO BOX 51193                    4
LOS ANGELES CA 90051-5493

**P. 3**

Check here and see reverse for address and/or phone number correction.

**Exhibit A**                                    Page
-------------------------------------------      ------
- WF's original account closure
  notice and Notice of nonpayment
  dated 01/27/2016.                              2

- WF's Forged Notice of nonpayment
  dated 01/21/2016.                              3

**Exhibit B**
-------------------------------------------
WF's first accusation of credit card fraud       2
dated 02/08/2016.

**Exhibit C**
-------------------------------------------
WF's credit card statements between
Nov. to Jan. 2016 which shows Plaintiff
had not used the card at all.                    2-3

**Exhibit D**
-------------------------------------------
- Jabbari and Heffelfinger v. Wells Fargo        2-7
Forgery and Fraud class action,
WF paid about $440 million.

- Federal Reserve condemns Wells Fargo
for "pervasive and persistent misconduct..."     8-9

- Treasury Dept. condemns Wells Fargo
with +$1.5 Billion fine for
"deficiencies and violations of law,
 the financial harm to consumers..."             10

# EXHIBIT <u>D</u>

**D.      Plaintiff Jabbari's Experience**

52.      Plaintiff Jabbari first opened an account with Wells Fargo in 2011. Like many people, he only wanted two accounts from Wells Fargo: checking and savings. Within two years, however, Mr. Jabbari had seven additional Wells Fargo accounts that he did not authorize and was not aware of.

53.      The account application for the two accounts opened in Mr. Jabbari's name in January 2011 include an apparently forged signature:

SHAHRIAR JABBARI

**TIN Certification Signature**

54.      That same month, a Wells Fargo employee enrolled Mr. Jabbari in Wells Fargo's ExpressSend service, which customers may use to send funds abroad. Mr. Jabbari did not request that service, did not authorize his enrollment in it, and has never used it. This is the blank signature field from that January 14, 2011 remittance service agreement he did not authorize:

**Remitter Signature**

55.      Four months later, Wells Fargo opened two more accounts in Mr. Jabbari's name that he did not authorize and was not aware of. The application for those accounts, opened April 6, 2011, has no signature at all:

P. 2

**Customer 1 Name**

SHAHRIAR JABBARI

**Customer 1 Signature**

56.     At that point, however, Wells Fargo was just getting warmed up. Less than one month

later, on May 2, 2011, Wells Fargo and its employee or employees opened two more accounts—a PMA

Prime Checking account and a High Yield Savings account—in Mr. Jabbari's name without his

knowledge or consent. That application also did not include a signature:

**Customer 1 Name**

SHAHRIAR JABBARI

**Customer 1 Signature**

57.     Less than two weeks later, Wells Fargo opened two *more* accounts in Mr. Jabbari's name:

a Complete Advantage Checking account and Money Market Savings account. As before, Mr. Jabbari

did not know of and did not consent to those accounts. That account application included different

signatures purporting to be Mr. Jabbari's when, in fact, they are not:



58.     Less than one month after that, on June 25, 2011, Wells Fargo struck again, opening

another savings account in Mr. Jabbari's name, using two more signatures that do not belong to him:



**SHAHRIAR JABBARI**

**Customer 1 Signature**

59.     Wells Fargo opened those two final accounts without Mr. Jabbari's authorization from a branch in Northern California on a day when Mr. Jabbari was in Los Angeles.

60.     During this period, Wells Fargo periodically sent new debit or other cards attached to these new accounts to Mr. Jabbari. Mr. Jabbari reasonably believed that those cards related to his original accounts, and were intended to replace his existing debit card. He had no reason to suspect they were attached to accounts he had no knowledge of.

61.     At one point, after he received three debit cards during a relatively short period of time, he contacted Wells Fargo, which essentially told him to disregard the additional cards and dispose of them.

62.     Mr. Jabbari believes he has been charged fees for many or all of the unauthorized accounts of which he is now aware, and that Wells Fargo may still be assessing fees for those and other accounts of which he is unaware.

63.     As a result of the unauthorized accounts, Mr. Jabbari has received notices from collection agencies seeking to collect unpaid fees allegedly owed to Wells Fargo. He has also been assessed an unknown amount in unauthorized fees. Moreover, he believes his credit score has been harmed as a result of Wells Fargo's effort to collect on unpaid fees; because of the damage Wells Fargo has done to his credit, Mr. Jabbari has been unable to open a new bank account.

P. 5

**E.** **Plaintiff Heffelfinger's Experience**

64.     To her knowledge, Plaintiff Heffelfinger first opened an account with Wells Fargo in March 2012. At that time, she opened two accounts – a checking and a savings account – because she was told she needed both in order to receive a debit card. This is Ms. Heffelfinger's signature from that account application:

KAYLEE HEFFELFINGER

TIN Certification Signature

65.     Three months earlier, however, before Ms. Heffelfinger ever requested an account with Wells Fargo, Wells Fargo and its employee or employees opened two accounts—a checking account and a savings account—in her name without her consent or knowledge, using this apparently forged signature:

Tax Responsible Customer Name:
KAYLEE HEFFELFINGER

TIN Certification Signature

66.     That was not the end of things. In October 2012, Wells Fargo and its employee or employees opened two more accounts—"Way2Save" checking and savings accounts—in Ms.

P. 6

Heffelfinger's name, again without her authorization or awareness. That account application had no signature at all:

Customer 1 Name

KAYLEE HEFFELFINGER

Customer 1 Signature

67.     In July of 2013, Ms. Heffelfinger discontinued actively using her Wells Fargo accounts, and only checked their balances occasionally.

68.     Sometime in 2014 a collection agency called Ms. Heffelfinger, claiming she owed Wells Fargo approximately $115. As she had not used her Wells Fargo accounts in some time, she thought this was simply an error and did not investigate the matter further.

69.     On May 16, 2015, Ms. Heffelfinger visited a Wells Fargo branch. There, the personal banker contacted the collections department, which told her she had two accounts in collections. On one account, she purportedly owed Wells Fargo $97 and on another $113. When she asked to see which accounts were in collections, the personal banker was able to find only one of the accounts—the one on which she apparently owed $113.

70.     Ms. Heffelfinger asked for details about the one account purportedly in collections that Wells Fargo was able to find. When she reviewed the account, it was unfamiliar to her, and she has no recollection of having opened this account or ever having received a statement for this account.

71.     Ms. Heffelfinger was now, understandably, quite concerned. Not only did Wells Fargo claim she owed it money, but the bank had an account in her name that she had not authorized and the bank claimed to have yet another account in her name that it could not locate.

P. 7

## Press Release

February 02, 2018

### Responding to widespread consumer abuses and compliance breakdowns by Wells Fargo, Federal Reserve restricts Wells' growth until firm improves governance and controls. Concurrent with Fed action, Wells to replace three directors by April, one by year end

For release at 6:15 p.m. EST

**Share**

## Federal Reserve

Responding to recent and widespread consumer abuses and other compliance breakdowns by Wells Fargo, the Federal Reserve Board on Friday announced that it would restrict the growth of the firm until it sufficiently improves its governance and controls. Concurrently with the Board's action, Wells Fargo will replace three current board members by April and a fourth board member by the end of the year.

In addition to the growth restriction, the Board's consent cease and desist order with Wells Fargo requires the firm to improve its governance and risk management processes, including strengthening the effectiveness of oversight by its board of directors. Until the firm makes sufficient improvements, it will be restricted from growing any larger than its total asset size as of the end of 2017. The Board required each current director to sign the cease and desist order.

"We cannot tolerate pervasive and persistent misconduct at any bank and the consumers harmed by Wells Fargo expect that robust and comprehensive reforms will be put in place to make certain that the abuses do not occur again," Chair Janet L. Yellen said. "The enforcement action we are taking today will ensure that Wells Fargo will not expand until it is able to do so safely and with the protections needed to manage all of its risks and protect its customers."

In recent years, Wells Fargo pursued a business strategy that prioritized its overall growth without ensuring appropriate management of all key risks. The firm did not have an effective firm-wide risk management framework in place that covered all key risks. This prevented the proper escalation of serious compliance breakdowns to the board of directors.

The Board's action will restrict Wells Fargo's growth until its governance and risk management sufficiently improves but will not require the firm to cease current activities, including accepting customer deposits or making consumer loans.

Emphasizing the need for improved director oversight of the firm, the Board

**Related Content**

Board Votes

P. 8

has sent letters to each current Wells Fargo board member confirming that the firm's board of directors, during the period of compliance breakdowns, did not meet supervisory expectations. Letters were also sent to former Chairman and Chief Executive Officer John Stumpf and past lead independent director Stephen Sanger stating that their performance in those roles, in particular, did not meet the Federal Reserve's expectations.

For media inquiries, call 202-452-2955.

Attachment 1 (PDF)

Attachment 2 (PDF)

Attachment 3 (PDF)

Attachment 4 (PDF)

Federal Reserve

Last Update: February 02, 2018

Complete page address ---- https://www.**federalreserve.gov**/newsevents/pressreleases/enforcement20180202a.htm


**Office of the**
**Comptroller of the Currency**
U.S. Department of the Treasury

NR 2018-41

**FOR IMMEDIATE RELEASE**
**April 20, 2018**

Contact: Bryan Hubbard
(202) 649-6870

### OCC Assesses $500 Million Penalty Against Wells Fargo, Orders Restitution for Unsafe or Unsound Practices

WASHINGTON—The Office of the Comptroller of the Currency (OCC) today assessed a $500 million civil money penalty against Wells Fargo Bank, N.A., and ordered the bank to make restitution to customers harmed by its unsafe or unsound practices, and develop and implement an effective enterprise-wide compliance risk management program.

The OCC's action was closely coordinated with an action by the Bureau of Consumer Financial Protection and made possible through the collaborative approach taken by the bureau. Separately, the bureau assessed a $1 billion penalty against the bank and credited the amount collected by the OCC toward the satisfaction of its fine.

The OCC took these actions given the severity of the deficiencies and violations of law, the financial harm to consumers, and the bank's failure to correct the deficiencies and violations in a timely manner. The OCC found deficiencies in the bank's enterprise-wide compliance risk management program that constituted reckless, unsafe, or unsound practices and resulted in violations of the unfair practices prong of Section 5 of the Federal Trade Commission (FTC) Act. In addition, the agency found the bank violated the FTC Act and engaged in unsafe and unsound practices relating to improper placement and maintenance of collateral protection insurance policies on auto loan accounts and improper fees associated with interest rate lock extensions. These practices resulted in consumer harm which the OCC has directed the bank to remediate.

The $500 million civil money penalty reflects a number of factors, including the bank's failure to develop and implement an effective enterprise risk management program to detect and prevent the unsafe or unsound practices, and the scope and duration of the practices. The OCC penalty will be paid to the U.S. Treasury. The OCC also reserves the right to take additional supervisory action, including imposing business restrictions and making changes to executive officers or members of the bank's board of directors.

The order also modifies restrictions placed on the bank in November 2016 relating to the approval of severance payments to employees and the appointment of senior executive officers or board members. The original restrictions related to severance payments applied to all employees, which unnecessarily delayed severance payments to employees who were not responsible for the bank's deficiencies or violations. This order maintains restrictions on the approval of severance payments to senior and executive officers and the appointment of senior executive officers or board members.

**Related Links**

- Consent Order for the Assessment of a Civil Money Penalty (PDF)
- Cease and Desist Order (PDF)

# # #

Source:
https://occ.**treas**.gov/news-issuances/news-releases/2018/nr-occ-2018-41.html#